760 P.2d 137 (1988)
JUDAS PRIEST, Glenn Tipton, Robert Halford, Ian Hill, Kenneth K. Downing, Betaglen Limited, Betaglow Limited, Betagrange Limited, Betagreen Limited, Petitioners,
v.
SECOND JUDICIAL DISTRICT COURT OF the STATE of NEVADA; and the Honorable Jerry Carr Whitehead, District Judge, Respondents,
James Vance, Emitt J.R. Vance, Phyllis Vance, Aunetta Roberson, Natural Parent of Raymond Eugene Belknap, an individual; and Aunetta Roberson, the Special Administrator of the Estate of Raymond Eugene Belknap, Real Parties in Interest.
No. 18967.
Supreme Court of Nevada.
August 25, 1988.
*138 Woodburn, Wedge & Jeppson, and Suellen Fulstone and Shawn B. Meador, Reno, for petitioners.
Kenneth J. McKenna, Timothy Paul Post, Erickson, Thorpe, Swainston, Cobb & Lundemo, and James L. Lundemo, Hamilton & Lynch, Vivian E. Lynch, Reno, for respondents.

OPINION
PER CURIAM:
In the early evening hours of December 23, 1985, Raymond Belknap and James Vance took a sawed-off shotgun to an empty churchyard. They made their way to the children's play area and sat down. Raymond Belknap anchored the gun beneath his chin, pulled the trigger, and thus ended his short life. James Vance also shot himself, but survived with critical injuries.
Lawsuits were soon filed against the petitioners and others by Vance and by Belknap's mother, claiming that the Judas Priest album "Stained Class" had directly caused their suicidal actions. Petitioners herein, the individual members of Judas Priest and their corporations[1], have requested that we prohibit the district court from asserting in personam jurisdiction over them. For the reasons expressed in this opinion, we deny the writ.
A writ of prohibition is the appropriate remedy to challenge the district court's refusal to quash service of process. Shapiro v. Pavlikowski, 98 Nev. 548, 654 P.2d 1030 (1982); NRS 34.320. Under the circumstances of this case, however, we do not believe the district court exceeded its jurisdiction in refusing to quash service of process on the petitioners. A court may assert jurisdiction if there is a statutory basis for that assertion which does not contravene the due process clause of the United States Constitution. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). Respondents have claimed, and petitioners have denied, that jurisdiction may be asserted under two Nevada statutes, NRS 14.065(2)(a) and NRS 14.080. NRS 14.065(2)(a) provides that any person who transacts business within Nevada submits himself to the jurisdiction of Nevada courts, even if he acts through an agent; NRS 14.080 allows for service of process on any corporation which directly or indirectly supplies a product for distribution, sale or use when an injury results from such activity in the state. In our opinion, either statute allows the assertion of jurisdiction in this case.
We have held that the Nevada long-arm statutes reach the limits of due process set by the Constitution. Certain-Teed Prods. v. Dist. Ct., 87 Nev. 18, 479 P.2d 781 (1971). Due process requires "minimum contacts" between the defendant and the forum state; additionally, the exercise of jurisdiction must be reasonable. See Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); Internat. Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Because we conclude that Judas Priest has established "minimum contacts" with Nevada, and that it is reasonable to assert jurisdiction in this case, we decline to grant the writ of prohibition requested by the petitioners.
Judas Priest created and recorded the master album of "Stained Class," and entered into a licensing agreement with CBS Records, Inc. for the express purpose of *139 distributing and selling copies of the album throughout the United States. The creator of a product is subject to personal jurisdiction where his product is sold if he is aware of and uses a national distribution system to make the sale. Myers v. Johns Manville Sales Corp., 600 F. Supp. 977 (D.Nev. 1984). Jurisdiction is not destroyed simply because the product passes through a middleman. Le Manufacture Francaise v. District Court, 620 P.2d 1040 (Colo. 1980). The test is whether the defendant has targeted the forum state for marketing his product, thereby purposefully availing himself of the benefits of the forum. Taubler v. Giraud, 655 F.2d 991 (9th Cir.1981); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In addition to the licensing agreement, which requires the payment of royalties to Judas Priest for each album sold, we note that the band has made two concert appearances in the state of Nevada, presumably to promote sales and increase its following. In our opinion, this activity is sufficient to show that Judas Priest has targeted Nevada as a market for sales of its products, and has thereby availed itself of the benefits of the forum.[2]
The exercise of jurisdiction in this case is not unreasonable, because the state has a strong interest in protecting its citizens from personal injury. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Furthermore, the only alternative forum available to the plaintiffs would be the courts of England. An overseas lawsuit is admittedly expensive and burdensome. While it is true that the members of Judas Priest will now be forced to defend a lawsuit in a country distant from their own, it is more equitable to place such a burden on them, and not the plaintiffs, because the band members consciously and deliberately chose to develop a world-wide market.
We are satisfied that the district court did not err by asserting in personam jurisdiction over the petitioners herein. We therefore deny the petition, and affirm the jurisdiction of the district court. Of course, in so doing, we are concerned only with the issue of jurisdiction, and we do not reach any question related to the merits of the cause of action respondents have attempted to allege.
NOTES
[1] The individual petitioners are residents of Great Britain, and the corporate petitioners are British corporations.
[2] We also note that petitioners indirectly supplied a product for distribution, sale or use which allegedly caused an injury in this state. This is sufficient for jurisdiction under NRS 14.080.