Maria T. GRAZIOSE, et al., Plaintiffs,

v.

**AMERICAN HOME PRODUCTS CORPORATION, et al., Defendants.**

**No. CV–S–01–0581–RLH(RJJ).**

United States District Court, D. Nevada.

Sept. 18, 2001.

Geoffrey White, White & Meany, Reno, NV, for plaintiffs.

Thomas Beko, Erickson, Thorpe & Swainston, Ltd., Reno, NV, for Albertson's, Inc.

Janell Adams, Craig W. Phillips, Lewis & Roca, LLP, Phoenix, AZ, James Berchtold, Amelia De Los Santos, Von Heinz, Lewis & Roca, LLP, Las Vegas, NV, for American Home Products Corporation.

Kristina Pickering, Morris Pickering & Sanner, Las Vegas, NV, for Chattem, Inc. and Target Corporation, Inc.

Gary Goodheart, Jones Vargas, Las Vegas, NV, for Consumer Health Products Association.

Jonathan Owens, Sandra Smagac, Alverson, Taylor, Mortensen, Las Vegas, NV, for Novartis Consumer Health, Inc.

Douglas Cohen, Jones Vargas, Las Vegas, NV, for Perrigo Company, Inc.

Stephen Kent, Woodburn & Wedge, Reno, NV, for Wal-Mart Stores, Inc.

## ORDER

HUNT, District Judge.

Before the Court is **Defendant Consumer Healthcare Products Association's Motion to Dismiss for Lack of Personal Jurisdiction** (# 24, filed June 11, 2001). Plaintiffs' Opposition (# 48) was filed July 13, 2001. Defendant's Reply (# 52) was filed August 6, 2001.

Defendant Consumer Healthcare Products Association ("CHPA") is a nonprofit trade association headquartered in Washington, D.C., with no members in Nevada.

Defendant CHPA's motion asserts that there is no basis for asserting personal jurisdiction over it by courts in Nevada. The motion has merit, and will be granted.

### FACTS RELATING TO JURISDICTIONAL QUESTION

The Complaint herein contains allegations by various Plaintiffs against various Defendants of damages incurred by the use of various over-the-counter ("OTC") drug products containing phenylpropanolamine ("PPA"). The causes of action include claims of manufacturing, selling and promoting the sale of these products, including claims of fraudulent concealment, civil conspiracy, and punitive damages. While all Defendants are included generically (i.e., by using terms like "defendants" generally, rather than naming specific defendants) in the allegations of manufacturing, selling or promoting the use or sale of these products, the specific reference to CHPA speaks of its purpose of ensuring the widest possible sale of its members' and affiliates' products throughout the United States, including Nevada.

The affidavit of CHPA shows that it has no role in the sale of any its member's products. Rather, it is a nonprofit trade association whose membership includes manufacturers and sellers of nonprescription medicine and dietary supplements. It is incorporated in Delaware and maintains its headquarters in Washington, D.C. Like most trade associations, it has never manufactured, marketed, distributed, promoted, tested or sold any products-in Nevada or elsewhere. It has no current members which are Nevada residents, nor were any Nevada residents members when the Complaint was filed. These facts are not disputed by any contrary evidence from Plaintiffs. However, other factors are argued in support of jurisdiction, which the Court will discuss presently. Plaintiffs merely assert that they need an opportunity to do discovery to determine what the facts are that may contradict the affidavit of this Defendant. If Plaintiffs do not now possess sufficient facts to establish jurisdiction, the naming of this Defendant is premature.

CHPA asserts that its contacts with Nevada have been only sporadic and isolated, insufficient to subject it to personal jurisdiction here.

Furthermore, it is established that CHPA is not a resident of Nevada, has no employees based here, is not registered to do business in Nevada, and is not required to and does not maintain a registered agent for service of process in Nevada. It does not own, lease, rent, or control any property in Nevada or maintain any bank accounts in Nevada.

It has done constitutionally protected lobbying, but even these events have only been sporadic. It monitors legislative and regulatory issues of interest to its members in a number of states, including Nevada, and has testified before state legislators and government officials.

### LAW

Nevada's "long-arm statute" allows jurisdiction of Nevada courts "over a party to a civil action on any basis non inconsistent with the constitution of this state or the Constitution of the United States." NRS 14.065(1). The statute has been "liberally construed to reach the outer limits of federal constitutional due process." *Hoag v. Sweetwater Int'l*, 857 F.Supp. 1420, 1424 (D.Nev.1994). Federal due process requires "minimum contacts" between a defendant and Nevada "in order that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tweet v. Webster*, 596 F.Supp. 130, 134 (D.Nev.1984) citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ The Supreme Court analyzes the issue of due process by considering whether personal jurisdiction is either "general" or "specific." *See e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 420, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Abraham v. Agusta, SPA*, 968 F.Supp. 1403, 1407 (D.Nev.1997). General jurisdiction provides for jurisdiction without consideration of the claim asserted, if a defendant's activities in the forum state can fairly be characterized as "continuous and systematic." "Continuous and systematic is a fairly high standard in practice." *Helicopteros*, 466 U.S. at 414, 420, 104 S.Ct. 1868.

■ Specific jurisdiction only gives a court power over a nonresident where the claims arise out of the particular activities of the defendant in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Abraham*, 968 F.Supp. at 1408. Specific jurisdiction does not require continuous and systematic contacts with the forum state, but certain "minimum contacts" must exist to establish specific jurisdiction. *See Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir.1993). In the *Core–Vent Corp.* case, the Ninth Circuit gave the following analysis:

(A) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities is the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Id. (citing Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)). These elements are not met here.

■ The burden is on Plaintiffs to establish this Court's jurisdiction over CHPA once it has been challenged. *Hoag v. Sweetwater Int'l*, 857 F.Supp. 1420, 1424 (D.Nev.1994). They have failed to meet that burden.

### DISCUSSION

Allegations that CHPA "promotes the use" of its members' products throughout the United States, including Nevada, is not sufficient, particularly in light of Mr. Mister's affidavit that CHPA does not promote any of its members products anywhere.

■ CHPA's contacts with Nevada have been limited to attending occasional conferences held here, limited involvement in lobbying activities which have nothing to do with the case, and a public service collaboration with the Bureau of Alcohol and Drug Abuse of Nevada Health Division, in May 2000, on a poster aimed at educating retailers on how to prevent the diversion of drugs containing pseudoephedrine, ephedrine, or PPA to illegal methamphetamine labs. These activities do not and cannot establish general personal jurisdiction.

■ Furthermore, there is not a specific act enumerated by Plaintiffs that CHPA committed in, or directed at, Nevada that gave rise to their Complaint. General allegations that the "Defendants," (which would generically include CHPA) "intentionally and deliberately withheld warnings and concealed information to the consuming public and to Plaintiffs concerning the severity of the products' toxic effects," and "conducted a sales and marketing campaign to promote the sale of the aforementioned products and willfully deceived plaintiffs, and the general public, as to the health risks in using the aforementioned product," even if true (which the affidavit states it is not) does not establish personal jurisdiction over CHPA because it does not sell, market, or promote any of the products referenced in the Complaint-in Nevada, or anywhere else. The Complaint makes general allegations but fails to specify which particular defendant did what, or when. The "consuming public" includes "millions of individuals" throughout the United States. Such a claim does not allege activities directed at or conducted in Nevada. This is not a case where this Defendant manufactures or sells products which it should know will likely be purchased in Nevada.

■ Plaintiffs argue that CHPA's lobbying activities are sufficient. But those lobbying activities did not involve anything that gave rise to this Complaint. It would chill constitutionally protected rights of free speech and governmental contacts to expose every person, who addressed a state legislature or public official, to jurisdiction over claims that did not arise out of such conduct. This Court joins with the Second Circuit in holding that personal jurisdiction may not be founded upon any kind of lobbying or "government contacts" such as "getting information from or giving information to the government, or getting the government's permission to do something." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir.1991) (*quoting Investment Co. Inst. v. United States*, 550 F.Supp. 1213, 1216–17 (D.D.C.1982)). The "government contacts" doctrine arises out of a constitutional right protected by the First Amendment to "petition the Government for redress of grievances." *Klinghoffer*, 937 F.2d at 51. To do otherwise would jeopardize public participation in government. This right has been protected by numerous courts.

■ Plaintiffs also argue that press releases or statements reported in the national press constitute "contacts" with Nevada, since they are reported or disseminated nationally. Statements made outside the forum state and transmitted into the forum by the national press cannot provide the basis for personal jurisdiction. *See e.g., Cacdac v. Sweet*, 761 F.Supp. 594, 596 (S.D.Ind.1989); *Bradley v. Mayo Foundation*, 1999 WL 1032806, at *19 (E.D.Ky. Aug.10, 1999); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994); *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 n. 3 (5th Cir.1990). Cases cited by Plaintiffs are inapposite. They include a defendant who attended a trade show and solicited business while in Nevada (*Firouzabadi v. First Judicial Dis-*

*trict Court,* 110 Nev.1348, 885 P.2d 616 (1994)); and a defendant who continually negotiated a contract with the plaintiff while the plaintiff was in Nevada *Trump v. District Court,* 109 Nev. 687, 857 P.2d 740, 748 (1993));

 Plaintiffs make an additional claim that the fact that CHPA has an informational website which has been accessed by Nevada residents. Contrary to Plaintiffs' assertions, however, CHPA's website is primarily for the convenience of its members, none of whom reside in Nevada. While a website designed to solicit sales or other business activities can certainly constitute grounds upon which to base specific jurisdiction, merely having an informational website should not form the basis for establishing jurisdiction anywhere and everywhere there is access to the web. *See e.g., Cybersell, Inc. v. Cybersell,* 130 F.3d 414, 419 (9th Cir.1997); *Zippo Manufacturing Co. v. Zippo Dot Com., Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa. 1997). To rule otherwise would subject everyone who had a telephone number to jurisdiction in any forum from which the number could be called. The nature of the website of CHPA is not the kind of website which should subject it to this Court's jurisdiction, be it specific or general. The Court also notes that specific jurisdiction includes a nexus requirement, *i.e.,* the purposeful availment by a defendant of the rights and protections of Nevada courts, to give rise to a cause of action. *See e.g., Budget Rent–A–Car v. Eighth Judicial District Court,* 108 Nev. 483, 835 P.2d 17, 20 (1992). That is missing in the website in question. Courts in the Ninth Circuit have held that even minimal purchases by forum residents through a website are insufficient to establish personal jurisdiction. *Callaway Golf Corp. v. Royal Canadian Golf Assoc.,* 125 F.Supp.2d 1194, 1203 (C.D.Cal.2000).

Plaintiffs argue that the purchase, by CHPA's broker, of two CDs in 1998 and 2000 from banks located in Nevada, constitute a contact for jurisdictional purposes. The fallacy of this claim requires no comment. There is no law this Court is aware of to support such a claim. If one purchases a car made in Detroit, it does not subject the purchaser to the jurisdiction of the State of Michigan!

Plaintiffs admit that the poster campaign is insufficient, alone, to invoke general jurisdiction. Insufficiency added to insufficiency do not a sufficiency make.

### DECISION

IT IS THEREFORE ORDERED that Defendant Consumer Healthcare Products Association's Motion to Dismiss for Lack of Personal Jurisdiction (# 24) is GRANTED.